UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY E. SPELLMAN, CDCR #G-23848, | Case No.: 3:22-cv-01710-RBM-LR |
| Plaintiff, | **ORDER:** |
| v. | **(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [Doc. 2]; AND** |
| PEYMAN SHAKIBA, Doctor; STEVEN G. FARMER, Podiatrist; D. CALDERON, Senior Registered Nurse 2; KIMBERLY KAESTNER, Registered Nurse; M. UNSON, Registered Nurse Supervisor, | **(2) SCREENING COMPLAINT PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b)** |
| Defendants. | **[Doc. 2]** |

Timothy E. Spellman ("Spellman" or "Plaintiff"), currently incarcerated at California Health Care Facility ("CHCF") located in Stockton, California, and proceeding pro se, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983, together with a motion to proceed in forma pauperis ("IFP"). *See* Compl., ECF No. 1; IFP, ECF No. 2. He alleges Defendants violated his Eighth Amendment rights by failing to provide adequate medical care while he was incarcerated at R.J. Donovan State Prison ("RJD"). Compl., ECF No 1.

/ / /

1

## I.      Motion to Proceed IFP

All parties instituting any civil action in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). A prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 577 U.S. 82, 85 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1), (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 577 U.S. at 85.

In support of his IFP Motion, Spellman has submitted a prison certificate and a

---

[1] In civil actions except for applications for a writ of habeas corpus, civil litigants bringing suit must pay the $350 statutory fee in addition to a $52 administrative fee. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020). The $52 administrative fee does not apply to persons granted leave to proceed IFP, however. *Id*.

certified copy of his trust account statement pursuant to 28 U.S.C. § 1915(a)(2) and S.D. Cal. Civ. L.R. 3.2. *See* ECF No. 2 at 4–6; *Andrews*, 398 F.3d at 1119. These documents show that Spellman carried an average monthly balance of $0.00, had average monthly deposits to his trust account for the six months preceding the filing of this action of $0.03, and an available balance of $0.00 at the time of filing. *See* ECF No. 2 at 4–6.

Therefore, the Court **GRANTS** Spellman's Motion to Proceed IFP (ECF No. 2) and assesses no initial partial filing fee pursuant to 28 U.S.C. § 1915(b)(1). The Court further directs the Secretary for the CDCR, or their designee, to collect this initial filing fee only if sufficient funds are available in Plaintiff's account at the time this Order is executed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee"); *Bruce*, 577 U.S. at 85. The remaining balance of the total fee owed in this case must be collected by the agency having custody of the prisoner and forwarded to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(2).

## II.   Screening Pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)

A.   Standard of Review for Screening

Because Spellman is a prisoner, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether Spellman has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of

3

Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The "mere possibility of misconduct" or "unadorned the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

B. 42 U.S.C. § 1983

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, Spellman must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

C. Plaintiff's Factual Allegations

Spellman, who is diabetic, alleges that in January of 2020, Defendant Steven Farmer, MD, a podiatrist, performed a partial nail removal on his right big toe. Compl., ECF No. 1 at 5. About a week after the procedure, Spellman sought medical attention for "[severe] pain, swelling, and drainage" of the toe and was seen by Defendants Shakiba and Kaestner; he was prescribed antibiotics and daily betadine soaks. *Id.*

4

From late February until mid-April of 2020, Spellman saw Kaestner several times for the infection that had developed in his right toe following the nail removal. *Id.* at 6–7. Spellman was referred back to podiatry. *Id.* According to Spellman, during a March 16, 2020 examination by Kaestner, she asked Shakiba to examine Spellman's toe, but he refused to do so. *Id.* at 6. On another occasion, Spellman claims Kaestner told him Shakiba suspected he was tampering with his wound. *Id.* at 6–7.

In mid-April of 2020, Spellman again saw Kaestner, "pleaded for relief" and expressed his fear his toe would need to be amputated. *Id.* at 7. Spellman claims Kaestner "printed out some documents relating to infections and dismissed the Plaintiff." *Id.* Later that month, Farmer examined Spellman's toe and, according to Spellman, was "bewildered" at its condition; he gave Spellman some betadine swabs and bandages, and told him he hoped his toe got better. *Id.*

About a month later, Spellman made a medical request and was seen by Shakiba, who, according to Spellman, "ordered the plaintiff back to see the defendant podiatrist Farmer to remove the entire toenail from the plaintiff's right great toe"; the procedure was performed by Farmer on June 2, 2020. *Id.* at 8. He was next examined by Shakiba on June 12, 2020, when Spellman alleges Shakiba refused to provide any pain relief medication. *Id.*

By the end of June 2020, Spellman claims he was experiencing mental health issues because he was "becoming overwhelmed b[y] the extreme pain" and his fear that his toe would be amputated. *Id.* at 8–9. He alleges Shakiba had "refused to examine [him] on several occasions" by this time and that early July 2020, Kaestner told him not to submit any more requests for medical treatment of his toe. *Id.* at 9.

In mid-July of 2020, Spellman was examined by another doctor at the prison who ordered a course of antibiotics to address the ongoing infection in Spellman's toe. *Id.* About a week later, according to Spellman, the nurse who performed his daily foot soak was concerned about the appearance of Spellman's toe and asked Shakiba to examine Spellman. *Id.* at 10. Spellman claims Shakiba again refused to examine him. *Id.*

Spellman alleges that from late July to late August of 2020, he requested medical attention and requested pain medication five times. *Id.* at 10–11. Kaestner examined him on these occasions, but Shakiba refused to do. *Id.* According to Spellman, Shakiba also told him he had discontinued the pain medication Spellman had previously been prescribed for diabetic foot pain and refused to prescribe any other pain medication. *Id.* at 11; ECF No. 1-4 at 20.

On August 21, 2020, Spellman claims Kaestner examined his toe and asked Shakiba to examine Spellman; he refused. *Id.* Spellman alleges Kaestner told him "Dr. Shakiba said that he has had enough of your toe." *Id.* Spellman told Kaestner he was in immediate pain and refused to leave. *Id.* at 11–12. In order to avoid disciplinary action, Spellman invoked a "man down" emergency call. *Id.* at 12. When the emergency team arrived and began to transport Spellman to the triage area, however, Spellman claims Shakiba came out of his office, told the emergency team to leave, and told Spellman "[h]e should get used to the pain." *Id.*

When Spellman returned for medical services on August 24, 2020, Shakiba again refused to see him despite a request by a nurse who had been assisting with Spellman's daily foot soak. *Id.* at 13. The nurse reported Shakiba's actions to her supervisor, Defendant Unson, who asked Spellman if he wanted to harm himself or others; when Spellman said no, Unson allegedly left the room and refused to take any action against Shakiba because he was "difficult." *Id.* at 13–14. Shakiba examined Spellman at the end of August and discussed amputation of the toe as an option. *Id.* at 14. He also told Spellman he suspected Spellman was making the toe worse on purpose. *Id.*

In early September of 2020, Spellman saw a new doctor who, upon examining Spellman's toe, ordered a consultation with a wound care specialist, antibiotics, an X-ray, and Tylenol 3 for pain. *Id.* at 15. The next day, Shakiba canceled the Tylenol prescription. *Id.* The X-ray showed "focal osteopenia," which is defined as "bones [which] are weaker than normal" and which can be an early sign of permanent bone loss. *See* https://www.webmd.com/osteoporosis/guide/osteopenia-early-signs-of-bone-loss.

6

According to Spellman, Shakiba continued to express his belief that Spellman was "faking" his pain and injury but nevertheless had him admitted to an off-site hospital for evaluation and treatment. *Id.* at 16. When Spellman returned to prison from Alvarado Hospital, Spellman alleges Unson refused to provide him with follow-up treatment information and did not change the bandage on his toe. *Id.*

Spellman alleges that in late September of 2020, he was examined by Kaestner who attempted to get Shakiba to examine Spellman's toe; again, Shakiba refused to do so. *Id.* at 17. According to Spellman, Shakiba told Kaestner to tell Spellman to "stop submitting medical forms . . . about his toe." *Id.* Spellman claims alleges he asked Defendant Calderon for help, but she walked away from him as he was explaining Shakiba's failure to treat him. *Id.* Spellman alleges Calderon subsequently told him he was "manipulating his wound." *Id.* at 26.

Spellman claims Kaestner told him not to submit any more medical requests about his toe again in mid-October 2020. *Id.* at 18. In late October 2020, an MRI showed Spellman likely had osteomyelitis, an infection of the bone, in his toe. *Id.*; ECF No. 1-6 at 15; *see also* https://www.mayoclinic.org/diseases-conditions/osteomyelitis/symptoms-causes/syc-20375913. At this point, Plaintiff claims Shakiba told him "Now I believe you," but refused to provide Spellman with any pain medication until Spellman completed a course of antibiotics despite Spellman telling Shakiba his pain level ranged from six to nine out of ten on a daily basis. *Id.* at 18–19. Spellman received wound care and antibiotics for the remainder of 2020. *Id.* at 19–20.

In early May of 2021, Shakiba terminated Spellman's wound care and told Spellman amputation of the toe was the best option for treatment. *Id.* at 10. Spellman continued to request medical treatment and pain medication at RJD until late September of 2021 when he was transferred to the California Health Care Facility ("CHCF"). *Id.* at 20–21. At CHCF, Spellman was immediately transferred to a higher level of care and received six weeks of intravenous antibiotics. *Id.* at 21. Amputation of Spellman's toe was again recommended as a solution. *Id* at 22.

D. <u>Discussion</u>

The Eighth Amendment requires that inmates have "ready access to adequate medical care," *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982), and "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A prison official acts with 'deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016)). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

"Inadvertent failures to provide adequate medical care, mere negligence or medical malpractice, delays in providing care (without more), and differences of opinion over what medical treatment or course of care is proper, are all insufficient to constitute an Eighth Amendment violation." *Norvell v. Roberts*, No. 20-cv-0512 JLS (NLS), 2020 WL 4464454, at *4 (S.D. Cal. Aug. 4, 2020) (citing *Estelle*, 429 U.S. at 105–07; *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir.1990); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)). Rather, "[t]o 'show deliberate indifference, the plaintiff must show that the course of treatment the [official] chose was medically unacceptable under the circumstances and that the [official] chose this course in conscious disregard of an excessive risk to the plaintiff's health.'" *Edmo v. Corizon, Inc.*, 935 F.3d 757, 786 (9th Cir. 2019) quoting *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016). "[A] purposeful act or failure to respond to a prisoner's pain or possible medical need," which causes harm is sufficient to establish deliberate indifference. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

/ / /

/ / /

8

### 1. Plaintiff States an Eighth Amendment Claim Against Defendants Shakiba and Farmer

Spellman has stated an Eighth Amendment claim against Defendants Shakiba and Farmer. "Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison physicians provide medical care.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). According to Spellman, Shakiba refused to examine and treat his infected toe on several occasions from January of 2020 through August of 2021, told him to stop requesting medical attention for his toe, and told him he believed Spellman was faking his pain and worsening the wound on purpose. *See* Compl., ECF No. 1 at 5–6, 9 12, 17–18. An October 202 MRI, however, revealed that the removal of Spellman's toenail had developed into a bone infection in his toe. *Id.* at 18. These facts plausibly allege Shakiba "kn[e]w of and disregard[ed] an excessive risk to [Spellman's] health and safety.'" *Toguchi*, 391 F.3d at 1057.

Spellman's allegations regarding Shakiba's refusal to treat his pain also plausibly allege an Eighth Amendment violation. "A medical need is serious if failure to treat it will result in significant injury or the unnecessary and wanton infliction of pain." *Peralta v. Dillard*, 744 F.3d 1076, 1082 (9th Cir. 2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks and citations omitted). Spellman claims Shakiba discontinued the pain medication Spellman had previously been prescribed for diabetic foot pain, canceled a prescription for pain medication written by another doctor, and refused to prescribe any other pain medication even though Spellman told Shakiba he was experiencing extreme pain from the infection, telling Spellman "[h]e should get used to the pain." *Id.* at 8, 10–12, 15, 18–19. Shakiba's disregard for Spellman's pain, coupled with his refusal to examine Spellman on multiple occasions "suggest[] a failure to treat that resulted in unnecessary, wanton infliction of pain and aggravation of other serious ailments." *See Wilhelm v. Aung*, No. 2:20-cv-1682-WBS-DMC-P, 2021 WL 877011, at *3

(E.D. Cal. March 9, 2021) (finding allegations prison doctor failed to prescribe pain medication for foot pain and failed to provide appropriate treatment were sufficient to survive screening).

Moreover, Spellman alleges that when he was examined by a different doctor in September of 2020, that doctor ordered a consultation with a wound care specialist, antibiotics, an X-ray, and Tylenol 3 for pain. Compl., ECF No. 1 at 15. These allegations also give rise to a reasonable inference that Spellman had a significant medical condition that required attention and that he was suffering from significant pain which was going untreated by Shakiba. *See Davis v. Sutley*, No. EDCV 07-1415-CBM (RNB), 2008 WL 1817262, at *4 (C.D. Cal. Apr. 17, 2008) (finding the extraction of plaintiff's tooth by a dentist after defendant refused to provide dental treatment and pain medication raised a reasonable inference plaintiff suffered from a "severe medical condition that did require treatment at the time [the] defendant . . . refused plaintiff dental treatment and pain medication"). Shakiba's alleged cancellation of the pain medication prescribed by another doctor also suggests he was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and that he actually drew that inference. *Toguchi*, 391 F.3d at 1057. Taken together, Spellman's claims regarding Shakiba's conduct are sufficient to plausibly allege an Eighth Amendment violation. *Iqbal,* 556 U.S. at 678.

Further, Spellman's claim that when Farmer examined his infected toe after the first procedure and he did nothing more than tell Spellman that he hoped his toe got better also plausibly allege a failure to provide appropriate medical care sufficient to state an Eighth Amendment claim at the screening stage. *See Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1123. By the time Farmer examined Spellman, he had undergone three months of antibiotics and betadine soaks with no improvement. Compl., ECF No. 1 at 5–7. Yet Farmer did not order any further tests, treatment, or medication to address Spellman's ongoing pain and infection. Spellman eventually developed a bone infection as a result of the lack of care. *Id.* at 18. These allegations are sufficient to plausibly allege that Farmer "[knew] of and disregard[ed] an excessive risk to [Spellman's] health and safety." *Toguchi*,

391 F.3d at 1057.

Accordingly, the Court concludes Spellman's allegations against Shakiba and Farmer are sufficient to survive the "low threshold" set for initial preliminary screening as required by 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b)(1), and that Spellman has plausibly alleged an Eighth Amendment claim against Shakiba and Farmer. *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678.

### 2. Plaintiff Fails to State an Eighth Amendment Claim Against Defendants Kaestner, Calderon, and Unson

Spellman's allegations against Defendants Kaestner, Calderon, and Unson do not plausibly allege an Eighth Amendment violation, however, because they are insufficient to show those Defendants acted "in conscious disregard of an excessive risk to the plaintiff's health." *Edmo*, 935 F.3d at 786; *Jett*, 439 F.3d at 1096. Spellman's allegations do not show Kaestner failed to treat him. She examined him many times between January 2020 and May of 2021 and asked Shakiba to examine him on several occasions but he refused. Compl., ECF No. 1 at 5–21. And while Spellman alleges Kaestner told him to stop submitting medical requests for his toe, Kaestner was simply repeating what Shakiba had told her to communicate to Spellman. *Id.* at 11, 17. Spellman has not alleged sufficient facts showing Kaestner disregarded a serious risk to Spellman's health. *Toguchi*, 391 F.3d at 1057.

The allegations against Defendants Calderon and Unson are also insufficient to plausibly allege they were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and that [they] actually drew that inference. *Toguchi*, 391 F.3d at 1057. Spellman claims Calderon walked away from Spellman as he was trying to explain Shakiba's failure to treat him and told him he was manipulating his wound. Compl., ECF No. 1 at 26. He claims that when Unson was told by a nurse that Shakiba was refusing to examine Spellman, Unson simply asked Spellman if he wanted to harm himself or others, and when Spellman said he did not, Unson refused to take any action against Shakiba. *Id.* at 13–14. On another occasion, Spellman alleges Unson refused

11

to provide information about follow-up treatment after his visit to Alvarado Hospital and did not change the bandage on his toe. *Id.* at 16. These allegations do not rise to the level of an Eighth Amendment violation because they do not show Calderon and Unson knew enough about Spellman's medical condition to conclude there was a serious risk to Spellman's health and safety and disregarded that risk. *Toguchi*, 391 F.3d at 1057; *Norvell*, 2020 WL 4464454, at *4 (stating that "[i]nadvertent failures to provide adequate medical care, mere negligence or medical malpractice, delays in providing care (without more), and differences of opinion over what medical treatment or course of care is proper, are all insufficient to constitute an Eighth Amendment violation"). Spellman has not alleged sufficient specific facts showing what actions Calderon or Unson took or failed to take which plausibly allege they were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and that they actually drew the inference.'" *Toguchi*, 391 F.3d at 1057.

### III.    Conclusion and Order

Based on the foregoing, the Court:

1.    **GRANTS** Plaintiff's Motion to Proceed In Forma Pauperis (ECF No. 2);

2.    **ORDERS** the Secretary of the CDCR, or her designee, to collect from Plaintiff's prison trust account the $350 filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding month's income and forward payments to the Clerk of the Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2).  ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO HIS ACTION;

3.    **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on Kathleen Allison, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California, 94283-0001, or in the alternative by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov;

4.    **DISMISSES** Plaintiff's claims against Defendants D. Calderon, Kimberly

Kaestner, and M. Unson for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b);

5. **DIRECTS** the Clerk to issue a summons as to Plaintiff's Complaint (ECF No. 1) upon Defendants DR. PEYMAN SHAKIBA and DR. STEVEN G. FARMER and forward it to Plaintiff along with a blank U.S. Marshal Form 285 for each of these Defendants. In addition, the Clerk will provide Plaintiff with certified copies of this Order, certified copies of his Complaint (ECF No. 1), and the summons so that he may serve the Defendants. Upon receipt of this "IFP Package," Plaintiff must complete the USM Form 285s as completely and accurately as possible, include an address where each Defendant may be found and/or subject to service pursuant to S.D. Cal. CivLR 4.1c., and return them to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package;

6. **ORDERS** the U.S. Marshal to serve a copy of the Complaint and summons upon Defendants DR. PEYMAN SHAKIBA and DR. STEVEN G. FARMER upon receipt and as directed by Plaintiff on the completed USM Form 285s, and to promptly file proof of service, or proof of any attempt at service unable to be executed, with the Clerk of Court. *See* S.D. Cal. CivLR 5.2. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3);

7. **ORDERS** Defendants DR. PEYMAN SHAKIBA and DR. STEVEN G. FARMER, once they have been served, to reply to Plaintiff's Complaint within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a). *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," defendant is required to respond); and

8. **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to

13

serve upon Defendants DR. PEYMAN SHAKIBA and DR. STEVEN G. FARMER, or if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document has been served on Defendants or their counsel, and the date of that service. *See* S.D. Cal. CivLR 5.2. Any document received by the Court which has not been properly filed with the Clerk or which fails to include a Certificate of Service upon the Defendants, or their counsel, may be disregarded.

**IT IS SO ORDERED.**

DATED: December 19, 2022

Hon. Ruth Bermudez Montenegro
United States District Judge

3:22-cv-01710-RBM-LR